**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**TYLER DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| | § | **CASE NO. 6:21-cr-00054-JCB** |
| | § | |
| **vs.** | § | |
| | § | |
| | § | |
| | § | |
| **DESNIQUE DESHAWN HERNDON (1)** | § | |
| | § | |

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

On May 15, 2023, United States District Judge J. Campbell Barker referred the above-styled criminal matter to the undersigned to address the issue raised by Defendant in his Motion in Limine #3 (ECF 166) concerning the voluntariness of any alleged statements and confession. Judge Barker referred the matter for a *Jackson-Denno* hearing and a report and recommendation (ECF 228). The Court conducted an evidentiary hearing on May 22, 2023. Having considered the arguments of counsel and the evidence presented at the hearing, the Court recommends that Defendant's objection to the admission of the July 30, 2021 statement and confession be **OVERRULED**.

## PROCEDURAL HISTORY

A federal grand jury returned an indictment on July 21, 2021, charging Defendant with five counts of Sex Trafficking of Children, in violation of 18 U.S.C. § 1591(a), and one count of Conspiracy to Commit Sex Trafficking of Children, in violation of 18 U.S.C. § 1594(c). A warrant was issued the same day. Defendant was arrested on Friday, July 30, 2021 and brought to Court for an initial appearance on Monday, August 2, 2021.

On January 3, 2023, Defendant filed Motion in Limine #3 Motion for Hearing on Voluntariness of Any Admission, Statement, or Confession, Whether Written or Oral (ECF 166). In the motion, Defendant asks the Court to conduct a *Jackson v. Denno* hearing and determine whether he voluntarily made admissions and confessions and whether those statements are admissible. In a subsequent notice filed with the Court, Defendant specified that he is referring to statements made during an interview conducted on July 30, 2021 (ECF 235).

## EVIDENTIARY HEARING

At the hearing, Defendant acknowledged that a *Miranda* warning was provided during the interview. He argued, however, that the interview was conducted by SA Williams and SA White in a stark room for more than three hours and there were times he did not understand what was going on or he was not acting voluntarily due to promises that were made. He also noted that he was in custody for four hours before the interview started. Defendant asserted that, during the interview, SA Williams implied that he was only interested in obtaining information concerning minor victims. Defendant did not present any witnesses or evidence at the hearing.

The Government called SA Williams as a witness and offered three exhibits that were admitted into evidence with no objection for purposes of this hearing only: (1) Government's exhibit 1 – Statement of Rights (*Miranda* waiver form); (2) Government's exhibit 2 – video recording of the July 30, 2021 interview; and (3) Government's exhibit 3 – unsworn transcript of the July 30, 2021 interview. SA Williams testified that, on July 30, 2021, he received a call from the Jacksonville Police Department stating that Defendant was picked up on a trespass complaint from a local hotel and they were aware of the outstanding warrant on the federal indictment. SA Williams and SA White traveled to Jacksonville to interview Defendant.

SA Williams testified that Defendant was arrested at approximately 1:05 p.m. and his interview of Defendant began at approximately 4:50 p.m. SA Williams asserted that Defendant showed no signs of injury, distress or agitation. Defendant's wrists were handcuffed in the front. Defendant had water, he was permitted to use the restroom, the room temperature was comfortable, and Defendant sat in an average office chair. After asking preliminary questions concerning where Defendant lives and about his background, SA Williams read Defendant the standard *Miranda* warnings and asked Defendant to sign a waiver form indicating that he understood his rights.

SA Williams denied using any form of intimidation or threats during the interview and stated that he maintained a calm, steady demeanor for the length of the interview. SA Williams testified that he asked Defendant for his help with the case, told Defendant that he would pass along any information provided by him to prosecutors, answered any questions posed by Defendant and clarified his questions when Defendant indicated he did not understand. SA Williams stated that he did not promise Defendant he would be released if he cooperated or lie to him about the pending charges. When Defendant took a break during the interview to use the restroom, SA Williams asserted that he re-advised Defendant of his rights before continuing on with the interview.

On cross-examination, SA Williams acknowledged that he and SA White were both armed during the interview, but he stated that neither agent brandished their weapons at any time. SA Williams testified that the interview was non-confrontational. He prioritizes offenses involving minors, but he does not recall telling Defendant that he was only interested in those offenses. SA Williams stated that he instructed the local law enforcement officers to not speak with Defendant before his interview, but he has no knowledge of anything that may have been

said to Defendant during the hours he was in custody before the interview.  The interview ended after approximately three hours and thirty minutes.

As stated, the Court admitted into evidence the video recording of the interview, the unsworn transcript and the *Miranda* waiver form for purposes of the admissibility hearing.  The recording and transcript are entirely consistent with SA Williams's testimony.  The video shows SA Williams reading to Defendant each of his rights and explaining the waiver form to him before Defendant signed it.  *See* Government's Exhibit 2; *See also* Government's Exhibit 3 (transcript) at *7.  The waiver form expressly states, "I have read, or someone has read to me, this statement of my rights and I understand what my rights are.  At this time, I am willing to answer questions without a lawyer present."  *See* Government's Exhibit 1. The rights identified on the form and read to Defendant by SA Williams include:

> You have the right to remain silent.
> Anything you say can be used against you in a court of law or other proceedings.
> You have the right to consult an attorney before making any statement or answering any questions.
> You have the right to have an attorney present with you during questioning.
> If you cannot afford an attorney, one will be appointed for you before any questioning, if you wish.
> If you decide to answer questions now, you still have the right to stop the questioning at any time, or to stop the questioning for the purpose of consulting an attorney.

The form includes Defendant's printed name and signature, as well as the signatures of SA Williams and SA White, with the date of July 30, 2021.  *Id*.  SA Williams also stated, "so if you want, we can talk" and "see if you could help me and then if you don't like the questions, you can stop at any time and just say no, I don't want to."  *See* Government's Exhibit 3 (transcript) at *7.

Multiple times throughout the interview, in response to SA Williams's questions, Defendant made statements such as, "I'll help you as best as I can, like whatever you ask me I'll

help," "I can help you with that," "whatever can help me in this situation," "I'm really just trying to do what is the best for this situation," "how can I help my situation right now," "whatever I can do to just help," "what else can be helpful," "I'm just showing how I can help," "what's the best thing I have to do," and "so like anything that can help me right now." *Id*. at *24, 25, 114, 134, 158, 159, 161 and 180. At one point during the interview, SA Williams expressly stated, "I don't want to put words in your mouth." *Id*. at *110. SA Williams explained to Defendant that he could possibly help himself by providing information about other people, but also stated, "I'm not allowed to promise that, I can only write a report, get a prosecutor, write a report and say, he helped – he helped me or he did not help me, that's all I can do, and then, then they'll consider all that." *Id*. at *146. SA Williams also let Defendant know that providing information about underage minors "would be something helpful that [he] could do." *Id*. at 151. When Defendant asked "what's the best thing right now," SA Williams said, "identify the victims of human trafficking, especially the minors, so we can go reach out to them and then if there's pimps out there that you know of, that we should target, then I'm just gonna write it all down, give it to the prosecutor, saying [you were] cooperative." *Id*. at 180.

SA Williams additionally informed Defendant that an arrest warrant had been issued on a human trafficking charge and that there was a 6-count indictment for human trafficking. *Id*. at *146, 215. SA Williams specified that the six counts were for human trafficking of minors. *Id*. at 161. When Defendant took a break to use the restroom, SA Williams reminded him that he was still "under the *Miranda* advisement," and reiterated that it means he has "the right to remain silent," that anything said, "can and will be used against [him] in a court of law," and that he could talk to him "without an attorney present" if he wanted to. *Id*. at 162. Defendant asked if he could "do the same with an attorney present if [he] need[ed] to talk to [them]," and SA

Williams responded "[y]eah, you could." *Id*. At that point, Defendant continued with the interview. Defendant spoke with his mother on speaker during the interview and SA Williams informed her of his location and charges. *Id*. at *174–179. Defendant asked questions concerning what would happen next and how to get a bond. SA Williams explained that Defendant would be taken before a judge on Monday and talked generally about what would happen, including that the judge would decide issues related to attorney appointment and detention or release. *Id*. at *185–190, 215.

### APPLICABLE LAW

"[T]he prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602, 1612 (1966). A person in custody that is subjected to interrogation must "be informed in clear and unequivocal terms that he has the right to remain silent," warned "that anything said can and will be used against the individual in court," and advised that "he has the right to consult with a lawyer and to have the lawyer with him during interrogation" and that "if he is indigent a lawyer will be appointed to represent him." *Id*. at 474-75. These four warnings, referred to as "*Miranda* rights," must be given during the custodial interrogation of a suspect for his statement to be admissible. *Dickerson v. U.S.*, 530 U.S. 428, 436, 120 S.Ct. 2326, 2331 (2000). "The inquiry is simply whether the warnings reasonably 'conve[y] to [a suspect] his rights as required by *Miranda*.' " *Duckworth v. Eagan*, 492 U.S. 195, 203, 109 S.Ct. 2875 (1989) (quoting *California v. Prysock*, 453 U.S. 355, 361, 101 S.Ct. 2806 (1981)). A valid waiver is one that is voluntary—meaning it is the product of a free and deliberate choice rather than intimidation, coercion, or deception—and that is made with a full

awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. *U.S. v. Cardenas*, 410 F.3d 287, 293 (5th Cir. 2005).

A defendant has a constitutional right to object to the use of a confession and to have a fair hearing and a reliable determination on the issue of voluntariness. *Jackson v. Denno*, 378 U.S. 368, 377, 84 S.Ct. 1774 (1964). "When a defendant challenges the voluntariness of a confession, the government must prove its voluntariness by a preponderance of the evidence in order for the confession to be admissible as substantive evidence at the defendant's criminal trial." *United States v. Bell*, 367 F.3d 452, 461 (5th Cir. 2004) (citation and internal quotation marks omitted).

Pursuant to 18 U.S.C. § 3501(b), a judge determining voluntariness "shall take into consideration all the circumstances surrounding the giving of the confession, including (1) the time elapsing between arrest and arraignment of the defendant making the confession, if it was made after arrest and before arraignment, (2) whether such defendant knew the nature of the offense with which he was charged or of which he was suspected at the time of making the confession, (3) whether or not such defendant was advised or knew that he was not required to make any statement and that any such statement could be used against him, (4) whether or not such defendant had been advised prior to questioning of his right to the assistance of counsel; and (5) whether or not such defendant was without the assistance of counsel when questioned and when giving such confession." "A confession is voluntary if, under the totality of the circumstances, the statement is the product of the accused's free and rational choice." *United States v. Broussard*, 80 F.3d 1025, 1033 (5th Cir. 1996). A statement may be deemed involuntary if there is coercive police conduct and a link between that conduct and the confession. *Colorado v. Connelly*, 479 U.S. 157, 163-65, 107 S.Ct. 515 (1986).

## DISCUSSION AND ANALYSIS

Having heard the testimony presented at the evidentiary hearing, reviewed the video recording and transcript of Defendant's interview, and considered the waiver form signed by Defendant during his July 30, 2021 interview, it is clear that Defendant received his *Miranda* warnings prior to questioning and that he voluntarily waived his rights. SA Williams fully informed Defendant of his rights before questioning Defendant. Defendant waived his rights and agreed to talk to SA Williams. Indeed, Defendant repeatedly expressed an eagerness to talk to SA Williams, endeavoring to help his situation. The recording, transcript and waiver form reveal a voluntary statement by Defendant.

Defendant did not articulate any basis for asserting that his statements were coerced and there is no evidence before the Court that Defendant was coerced in any way. The record establishes that Defendant was taken for arraignment on the next business day following his arrest, he knew the nature of the charges against him during the questioning by SA Williams, he was advised that he could remain silent and that statements could be used against him, and he was advised of his right to the assistance of counsel and that he could talk to SA Williams with or without counsel. Defendant referenced promises made that allegedly affected the voluntariness of his statement. SA Williams expressly told Defendant multiple times that all he could do would be to tell the prosecutors that he was cooperative because those decisions were not up to him. *See*, *e.g.*, Government's Exhibit 3, at *146. Telling a defendant that the prosecutor will be informed of his cooperation is not an impermissible promise of leniency affecting the voluntariness of a confession. *U.S. v. Tatum*, 121 F.Supp.2d 577, 581 (E.D.Tex. Aug. 10, 2000) (citing *U.S. v. Nguyen*, 155 F.3d 1219, 1223 (10th Cir. 1998), cert. denied, 525 U.S. 1167, 119 S.Ct. 1086 (1999)). The totality of circumstances supports a conclusion that

Defendant was properly apprised of his *Miranda* rights and he provided a knowing and voluntary statement to law enforcement officers on July 30, 2021 with full comprehension of the consequences of making that statement.

## RECOMMENDATION

In light of the foregoing, it is recommended that Defendant's objection to admission of the July 30, 2021 statement and confession be **OVERRULED**.

Within fourteen days after receipt of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge.  28 U.S.C. § 636(b).

A party's failure to file written objections to the findings, conclusions and recommendations contained in this Report within seven days after filing shall bar that party from *de novo* review by the district judge of those findings, conclusions and recommendations and, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted and adopted by the district court.  *Douglass v. United Servs. Auto. Assn.*, 79 F.3d 1415, 1430 (5th Cir.1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1).

So ORDERED and SIGNED this 24th day of May, 2023.

_____
K. NICOLE MITCHELL
UNITED STATES MAGISTRATE JUDGE